**UNITED STATES, Appellee,**

v.

**Sergeant Melvin G. ANDERSON, SSN 462–84–9752, United States Army, Appellant.**

**CM 438198.**

U. S. Army Court of Military Review.

20 March 1980.

Captain Courtney B. Wheeler, JAGC, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Lieutenant Colonel John F. Lymburner, JAGC, and Major Carlos A. Vallecillo, JAGC.

Captain James A. Pritchett, JAGC, argued the cause for appellee. With him on the brief were Major David McNeill, Jr., JAGC, and Major Robert B. Williams, JAGC.

Before JONES, CLAUSE and LEWIS, Appellate Military Judges.

tion." *United States v. Torres*, 3. M.J. 659, 662 (A.C.M.R.1977).

## OPINION OF THE COURT

JONES, Senior Judge:

The appellant was convicted of two specifications of taking indecent liberties with a female under 16 years of age in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934.[1] He was sentenced to a bad-conduct discharge and confinement at hard labor for three years. The convening authority approved the findings with minor deletions as to the extent of the indecent liberties in each instance, reduced the confinement by one year, and approved the punitive discharge.

The primary issue before us in the mandatory review of this case pursuant to Article 66, UCMJ, 10 U.S.C. § 866, is the correctness of the military judge's action in reversing a prior evidentiary ruling and admitting a pretrial statement of appellant that acknowledged prior acts of sexual misconduct with his two minor step-daughters. We hold that the statement was admissible but not in the manner acted upon by the military judge.

I

In a preliminary hearing, the defense counsel asked the military judge to rule that a portion of appellant's pretrial statement admitting prior acts of sexual misconduct over a period of years with his two step-daughters was inadmissible. He contended that the acts were too remote in time and that the prejudicial effect of the evidence far outweighed its probative value. He also contended there was no corroboration for the prior acts of misconduct. The Government argued that evidence of the acts was admissible to rebut the defense of accident, and that it was admissible on the case-in-chief because other portions of the statement raised the issue of an accidental touching.

The military judge ruled that he would admit the statement only in rebuttal to any defense of accident that might be raised by the defense. He stated that ". . . arguably, [he] might allow the Government to put it in as to the question of intent . ." but he limited the basis for his ruling to that of rebuttal of accident. He deferred ruling on the question of corroboration.

After the prosecution had presented the testimony of the two victims, it again sought to have the statement admitted, arguing that the issue of accident was raised in the statement itself. The military judge reaffirmed his ruling and the prosecution rested.

At that point the defense asked for a ruling on whether the military judge would admit the statement as rebuttal if the defense limited its evidence to duty performance and general reputation as to character. The military judge responded that he believed the statement was admissible to prove intent (paragraph 138g (3), Manual for Courts-Martial, United States, 1969 (Revised edition)) as well as to rebut the defense of accident (paragraph 138g (6), MCM (Rev.)). This dialogue then followed:

IC: Do I understand your ruling then, you're going to permit the Government to reopen its case and offer that into evidence?

MJ: No. If you rest now, that's it. But if you continue on then I will allow the Government to open it.

IC: May I have another moment?

MJ: I might also say I'll entertain a request to submit it now.

TC: Your honor, at this time the Government would move that this statement be admitted into evidence upon the basis of intent. . .

MJ: Okay, it will be so admitted as Prosecution Exhibit 1. . . .

There is no question but that the military judge reversed himself after the defense indicated it might employ a tactic which would prevent the statement from being admitted. The defense contends this rever-

---

1. The victims of the charged offenses were neighbor girls who in each instance were spending the night with appellant's young step-daughters. The offenses occurred six months apart.

sal of ruling was error. We think not, although we do not endorse the procedure followed by the military judge.

The military judge initially restricted the basis for his ruling even though he noted two bases for admissibility. Out of undue caution he "tilted" his preliminary ruling toward the defense. Subsequently, he chose to correct himself and make the ruling to which the Government had been entitled from the outset.

■■■ The military judge may reverse himself, (Article 51(b), UCMJ, 10 U.S.C. § 851(b); paragraph 67*b*, MCM, 1969 (Rev.)), provided of course his action is not arbitrary or capricious. Although it would have been preferable for him to have ruled the statement tentatively admissible initially, it can hardly be said that making a correct ruling is an arbitrary act. Similarly, we do not believe the military judge abandoned his impartial position when he changed his ruling. There was no repeated aiding of the prosecution, nor hindering of the defense. *See United States v. Wilson*, 2 M.J. 548 (A.C.M.R.1976). Further, we are at a loss to see how appellant was placed at any disadvantage in presenting his defense when he received the ruling prior to the time he started his case. We also see no basis to the contention that appellant's cross-examination of the victims would have been different had the ruling that the statement was admissible been made initially. Thus, we find no possibility of prejudice from the change of ruling.

### II

■■■ The second facet of appellant's argument on admissibility concerns the lack of corroboration of the prior acts of misconduct. Under paragraph 140*a*(5), MCM, 1969 (Rev.), a confession or admission cannot be considered unless it is corroborated. The question then arises as to whether that rule applies to evidence of offenses not charged when such evidence is contained in an otherwise admissible pretrial statement. The defense contended at trial that such corroboration was necessary and that none was present. The prosecution conceded that corroboration was necessary and proceeded to offer corroboration in the form of a spontaneous exclamation by one of the appellant's step-daughters. The military judge ruled that corroboration was required under paragraph 140*a*(5), MCM, 1969 (Rev.), before the acts of uncharged misconduct could be considered, and that such corroboration was in fact presented.[2]

Before us the defense again contends that corroboration was needed and that none was forthcoming. The Government does not respond directly to this contention but instead points to the Court of Military Appeals' decision in *United States v. Janis*, 1 M.J. 395 (C.M.A.1976).

In *Janis*, the Court inferentially at least reached the conclusion that corroboration was not required for confessions or admissions of acts of misconduct not charged when evidence of such acts was in a statement that was otherwise admissible. The Court admitted into evidence a pretrial statement in which the accused admitted causing not only the death of his son, for which he was then being tried, but also the death of another son three years earlier, for which he was not being tried. That portion of the statement pertaining to the death of the son three years earlier was admitted on the question of the accused's intent to commit the act charged. The entire discussion of the question of admissibility centered on the uncharged misconduct rule and its exceptions (paragraph 138*g*, MCM, 1969 (Rev.)). Once the confession to uncharged misconduct was found relevant to the question of intent on the act charged, and once it met the other prerequisites attendant to that rule, it was held admissible. The question of corroboration was never mentioned. No corroboration was required.[3]

---

2. This portion of the proceeding was held in an out-of-court session and the damaging corroborative evidence (see footnote 5, *infra*) was never before the members.

3. Had corroboration of the confession to the uncharged offense been required, there is the distinct possibility that the death certificate and the autopsy report that were admitted

We believe the *Janis* case demonstrates a correct application of the corroboration rule of paragraph 140*a*(5), MCM, 1969 (Rev.), in that the corroboration requirement pertains only to the offense or offenses charged. The purpose of the rule, as variously stated by the courts and legal writers, is to prevent an accused from being *convicted* on an untrue confession to a nonexistent offense, or at least to one he did not commit. Where the confession or admission concerns a crime not charged, there is no possibility of a conviction of that crime and thus no reason for corroboration.[4]

Under either the strict corroboration rule in effect in the majority of jurisdictions which requires the corroboration to touch on the *corpus delecti* or the more lenient standard announced by the Supreme Court of the United States and incorporated in the *Manual*, the focus is on insuring that the offense charged was committed. *See* 7 Wigmore, Evidence §§ 2071–2074 (Chadbourn rev. 1978); Wharton's Criminal Evidence §§ 691–699 (13th Edition, 1973); Department of the Army Pamphlet 27–22, Military Criminal Law, Evidence, §§ 36–1—36–4 (1975). The military judge was in error in stating that corroboration was necessary and was present,[5] but the error was inconsequential because the statement was admissible without regard to the corroboration requirement.

The pretrial statement of the appellant qualified for acceptance in evidence as an admission[6] and the corroboration required by paragraph 140*a*(5), MCM, 1969 (Rev.), was furnished by the testimony of the victims. The whole statement was admissible, 7 Wigmore, Evidence §§ 2100, 2115 (Chadbourn rev. 1978), provided the portion pertaining to uncharged misconduct qualified as an exception to the general rule of exclusion stated in paragraph 138*g*, MCM, 1969 (Rev.).

The evidence of other acts of misconduct, as stated in the first section of this opinion, was admissible under paragraph 138*g*, MCM, 1969 (Rev.), to show appellant's intent. *United States v. Janis, supra; United States v. Marcey*, 9 U.S.C.M.A. 182, 25 C.M.R. 444 (1958). The requirements set forth in *Janis* and *United States v. Kelley*, 7 U.S.C.M.A. 584, 23 C.M.R. 48 (1957), were also met. There was a nexus in time, place and circumstances between the uncharged misconduct and the offenses charged. The offenses were similar in nature and occurred in the appellant's home. Although the attempted act of intercourse with his young step-daughter seven years previously would be too remote, standing alone, as part of a course of molestation that continued through the year prior to this incident, the time link was satisfied.

---

would have sufficed. *United States v. Janis*, 1 M.J. at 396.

4. If the accused were subsequently charged with the other crime and if the confession or admission were offered in that trial, then the rule requiring corroboration would come into play.

5. The improper imposition of a corroboration requirement was compounded by the ruling that there was corroborating evidence in the form of a spontaneous exclamation. The spontaneous utterance was made under the following circumstances. When the father of one of the victims heard that his daughter had been molested, he became enraged, took a knife, and went looking for the appellant. The victim and her friend, the step-daughter of the appellant, were present and observed this. They became hysterical. The mother of the victim asked the step-daughter if her step-father had ever molested her and she replied that he had; she also replied in response to another question that her step-father had been having sexual intercourse with her since she was seven years old.

It was not contested that the step-daughter was excited at the time she made the statement and that such excitement was a result of seeing a startling event, viz, the victim's father rush out with a knife seeking her step-father. To qualify as a spontaneous exclamation, however, the spontaneous utterance must concern the startling event which caused the state of excitement or shock. Here the utterance concerned events that happened years previously. The statement should not have been admitted. Without it there was no corroboration.

Fortunately this testimony was not repeated before the members so no question of its prejudical effect arose.

6. Appellant admitted to being in the room and touching one of the victims, albeit accidentally.

The appellant's exposition of the attempted act of intercourse and of the repeated touchings of the two step-daughters on their upper legs and buttocks over a period of years shows a clear course of misconduct and leaves no doubt that earlier offenses occurred. Finally, and always most difficult, is the weighing of the probative value of the evidence of uncharged misconduct against its potential prejudicial impact. There is no doubt the evidence was damaging but such damage paled when compared with the explicit testimony of the two young victims. Its value in showing intent, and subsequently in rebutting an accidental touching, far exceeded its prejudicial effect. The judge did not abuse his discretion on that aspect of the question of admissibility.[7]

The other assignments of error have been considered. The findings of guilty and the sentence are affirmed.

Judge CLAUSE and Judge LEWIS concur.

---

**7.** The military judge gave an appropriate limiting instruction on the purposes for which the evidence of uncharged misconduct in the pretrial statement was admitted.